UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CR-20-113-G |
| | ) |
| JIMMY LEE BROOKS, | ) |
| | ) |
| Defendant. | ) |

### ORDER

Now before the Court is a Motion in Limine to Admit Excited Utterances (Doc. No. 138) filed by Plaintiff United States of America. Defendant Jimmy Lee Brooks has responded (Doc. No. 154).

I.  *The Government's Motion*

Defendant has been charged in a three-count Superseding Indictment with: (1) possession of ammunition despite previously having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1), on or about March 18, 2020; (2) possession of a firearm despite previously having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1), on or about March 18, 2020; and (3) witness tampering, in violation of 18 U.S.C. § 1512(b)(1), on or about April 15, 2020. *See* Superseding Indictment (Doc. No. 42). This case is set for jury trial on the Court's April 2021 docket.

The factual circumstances of this case have been thoroughly addressed in other orders of the Court, so they will be recited only as necessary herein. As alleged, Defendant's girlfriend S.J. jumped into another woman's car after the shooting on March

18, 2020, and that woman, H.T., drove S.J. to a hospital in Midwest City for treatment of S.J.'s gunshot wound. The Government alleges that H.T. will testify that as S.J. ran toward H.T.'s car, S.J. "screamed, 'He has a gun!'" and "appeared terrified." Gov't's Mot. at 7. H.T. also overheard S.J. on the phone with her mother while they were driving. According to H.T., S.J. "repeatedly named who had shot her"; "it was clear from the conversation that [S.J.] knew the individual who had shot her, and H.T. believed it to be S.J.'s boyfriend." *Id.* at 7-8.

After S.J. arrived at the hospital, a nurse named Rose Beeching assisted with admitting S.J. Nurse Beeching will testify that S.J. was first seen at 7:10 p.m.—about 25 minutes after the shooting—and that S.J. stated that she had been shot by her boyfriend after they had an altercation at the "MLK beauty shop" and she got in a stranger's vehicle. *See id.* at 8, 9 n.2; *see also id.* Ex. 1 (Doc. No. 138-1) at 1.

At 7:13 p.m., Midwest City Police Officer Dentista Parvanova arrived at the hospital and spoke to S.J. Officer Parvanova will testify that S.J. described an altercation with Defendant and then identified Defendant as the individual who shot S.J. as she rode away in H.T.'s car. *See* Gov't's Mot. at 10; *see also id.* Ex. 2 (Doc. No. 138-2) at 2, 5.

  II. Discussion

As acknowledged by the Government's Motion, offering S.J.'s statements from the day of the shooting as evidence to prove their truth would generally be precluded by the rule against hearsay in Federal Rules of Evidence 801 and 802. The Government argues that S.J.'s statements discussed above are, however, admissible pursuant to Federal Rule of Evidence 803(2), which sets forth an "Excited Utterance" exception for "[a] statement

relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2).

"The exception proceeds on the theory that circumstances may produce a condition of excitement which temporarily stills the capacity for reflection and produces utterances free of conscious fabrication." *United States v. Magnan*, 863 F.3d 1284, 1292 (10th Cir. 2017) (internal quotation marks omitted). "Whether the excited utterance exception to the rule against hearsay applies under the particular circumstances of a case is an inquiry committed to the sound discretion of the district court." *Id*.

"The excited-utterance exception has three requirements: (1) a startling event; (2) the statement was made while the declarant was under the stress of the event's excitement; and (3) a nexus between the content of the statement and the event." *United States v. Pursley*, 577 F.3d 1204, 1220 (10th Cir. 2009). Defendant disputes that the second requirement is met as to most of the statements discussed above. *See* Def.'s Resp. at 2-3. Defendant does not dispute that S.J.'s screaming to H.T. in the parking lot qualifies as an excited utterance.

As explained by the Tenth Circuit:

> Courts consider a range of factors in determining whether a declarant made a statement while under the stress of a particular event. Among the more relevant factors are: the amount of time between the event and the statement; the nature of the event; the subject matter of the statement; the age and condition of the declarant; the presence or absence of self-interest; and whether the statement was volunteered or in response to questioning. We have recognized that there is no precise amount of time between the event and the statement beyond which the statement cannot qualify as an excited utterance.

*Pursley*, 577 F.3d at 1220-21 (citation and internal quotation marks omitted). Applying these factors, the Court finds that all of S.J.'s challenged statements were made "while under the stress of a particular event"—i.e., S.J. being attacked and then shot while fleeing her attacker. *Id.* at 1220.

- S.J.'s Statements While in H.T.'s Car: These statements were made mere moments after S.J. had been shot, and Defendant cites no authority for his suggestion that S.J. being able to dial her phone at the time negates the spontaneity of the statements. *See United States v. Smith*, 606 F.3d 1270, 1279-80 (10th Cir. 2010) (upholding admission of a challenged statement that was made by the victim "[a]t the first possible moment to disclose the assault to another person").

- S.J.'s Statements to Nurse Beeching: These statements were made 25 minutes after S.J. was shot with a deadly weapon and then fled with a stranger. Courts routinely find that Rule 803(2) applies to statements made even longer after the occurrence of the startling event. *See, e.g.*, *Magnan*, 863 F.3d at 1294-96 (upholding the application of the exception to statements made by a gunshot victim two hours and 4-5 hours after the shooting. This is because "[a]dmissibility hinges on a statement's contemporaneousness with the excitement a startling event causes, not the event itself." *Smith*, 606 F.3d at 1279. The Government alleges that Nurse Beeching will testify that when they spoke, the excitement was apparent: S.J. was "terrified," "in trauma," and in pain. Gov't's Mot. at 15-17 ("Nurse Beeching will testify that she has seen hundreds of patients and that she specifically remembered the fear in [S.J.'s] eyes."). And the facts that the statements were made in response

4

to the nurse's questioning "did not necessarily destroy the excited nature of the victim's responses." *Bradford v. Timmerman-Cooper*, No. 5:07-CV-01915, 2008 WL 3992142, at *7 (N.D. Ohio Aug. 25, 2008); *see also Magnan*, 863 F.3d at 1294 ("[A] general question seeking the reaction of the speaker for what he had just experienced does not by itself go far to displace the reactive force of a stimulus that has a great impact on the speaker." (internal quotation marks omitted)); *Webb v. Lane*, 922 F.2d 390, 394 (7th Cir. 1991) ("At the time Griffis made the statements he was lying on an emergency room gurney severely injured and under the stress of the attack. Thus, the fact that the statements were made in response to Magliano's questions, although relevant, did not destroy their statements' spontaneity.").

- S.J.'s Statements to Officer Parvanova: Similarly, S.J.'s statements to Officer Parvanova were made only about three minutes after those made to Nurse Beeching, and "if the declarant's excitement level is severe, then statements made in response to questioning may be admitted." *Magnan*, 863 F.3d at 1293 (alteration and internal quotation marks omitted); *see also Webb*, 922 F.2d at 394 ("The tremendous shock and stress caused by the shooting and Griffis' subsequent pain may well have postponed his opportunity to reflect.").

Accordingly, the Court finds that the statements identified in the Government's Motion are not excluded by the rule against hearsay, as they are "[s]tatements relating to a

5

startling event" and made while S.J. "was under the stress of excitement" caused by that startling event. Fed. R. Evid. 802(3).[1]

## CONCLUSION

For the reasons outlined above, the Government's Motion in Limine to Admit (Doc. No. 138) is GRANTED to the following extent: the cited statements of S.J. are hereby found to be excited utterances not excluded by the rule against hearsay.

IT IS SO ORDERED this 26th day of April, 2021.

CHARLES B. GOODWIN
United States District Judge

---

[1] This Order does not "admit" the statements into evidence as requested by the Government. Relatedly, to the extent the Motion states that admission of these statements will not deprive Defendant of his right to confrontation, Defendant did not respond to this assertion, and so the Court need not reach this issue here.